UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHARLES MICHAEL SPARKS, | : | No. |
| | : | |
| Plaintiff, | : | |
| | : | COMPLAINT |
| -against- | : | |
| | : | |
| THE NEW YORK TIMES COMPANY | : | |
| | : | Plaintiff Demands a Trial by Jury |
| | : | |
| Defendant. | : | |
| | : | |

Plaintiff CHARLES MICHAEL SPARKS ("Mr. Sparks" or "Plaintiff"), by and through his attorneys, Levine & Blit, PLLC, complaining of defendant THE NEW YORK TIMES COMPANY ("NYT" or "Defendant") hereby alleges as follows:

## NATURE OF THE ACTION

1. This civil action is brought to remedy Defendant's unlawful interference with Plaintiff's rights pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), retaliation in violation of the FMLA, and discrimination based upon caregiver status in violation of the New York City Human Rights Law ("NYCHRL").

2. Plaintiff seeks declaratory and injunctive relief; monetary damages in the form of back pay, front pay, and lost benefits of employment; compensatory damages, including, but not limited to, emotional distress and mental anguish; liquidated damages pursuant to the FMLA; punitive damages; prejudgment interest; reasonable attorney's fees; costs of this action; and any such other and further relief this courts deems just and equitable.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C § 1391(b)(1).

## THE PARTIES

5. Plaintiff is an adult male who is a citizen of the State of New York.

6. Upon information and belief, the NYT is a New York corporation with its principal place of business located at 620 Eight Avenue, New York, NY 10018.

7. At all times relevant to this Complaint, Defendant was an "employer" within the meaning of all relevant federal, state, and local statutes.

8. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant within the meaning of all relevant federal, state, and local statutes.

9. At all times relevant to this Complaint, Defendant was a covered employer within the meaning of the FMLA.

10. At all times relevant to this Complaint, Defendant employed fifty (50) or more persons within 75 miles of Plaintiff's work site.

11. At all times relevant to this Complaint, Plaintiff was an employee entitled to FMLA rights and protections.

12. At the time that Plaintiff exercised or sought to exercise his rights under the FMLA, Plaintiff had been employed by Defendant for over 12 months and had worked more than 1,250 hours in the prior 12 months.

13. At all times relevant to this Complaint, Plaintiff was eligible to exercise his rights pursuant to the FMLA.

14. At all times relevant to this Complaint, Plaintiff was qualified to hold his position of employment with Defendant through his knowledge, education, training, experience, and/or qualifications.

15. At all times relevant to this Complaint, Plaintiff was a "caregiver" as defined by the NYCHRL.

16. At all times relevant to this Complaint, Defendant was aware that Plaintiff had caregiving responsibilities and had planned to take intermittent leave due to caregiving responsibilities.

## FACTUAL ALLEGATIONS

17. Mr. Sparks commenced his employment with the NYT in or about September 2019 in the position of Product Manager.

18. Plaintiff's most recent employment position with Defendant was Senior Product Manager following his promotion on or about August 2021.

19. Throughout his tenure, Plaintiff had consistently exceeded expectations in his year-end reviews by the NYT.

20. On or about March 1, 2023, Plaintiff informed his manager, Rokk-Vincelli Williams ("Mr. Williams"), of his wife's pregnancy and his intent to take paternity leave in accordance with the NYT's policy, allowing for 20 weeks of parental leave.

21. At that time, Mr. Williams did not provide any information to Plaintiff concerning his rights pursuant to the FMLA, nor did Mr. Williams refer Plaintiff to any person or department within NYT who would have information concerning Plaintiff's rights pursuant to the FMLA.

22. Upon information and belief, at the time that Plaintiff informed Mr. Williams of his wife's pregnancy and intent to take paternity leave, Mr. Williams had not performed the 2022 annual review for Plaintiff.

23. Shortly thereafter, Mr. Williams took adverse actions against Plaintiff because of his stated intention to take paternity leave, a protected activity provided under the FMLA.

24. On March 3, 2023, two days after notifying his intent to take paternity leave, Plaintiff received notice of being placed on a Performance Improvement Plan (PIP).

25. Prior to being notified that he would be placed on a PIP, neither NYT nor Mr. Williams gave Plaintiff any negative feedback or warning that Plaintiff was in danger of being placed on a PIP.

26. Plaintiff did not receive the details of the PIP until March 16, 2023.

27. On the first day that the PIP was in effect, Mr. Williams admitted to Plaintiff that he "screwed up" and he "did not give you [Plaintiff] feedback or a heads up that this [the PIP] might happen."

28. Furthermore, on or about March 17, 2023, Plaintiff's 2022 annual review was submitted indicating that he "partially meets expectations", which was the first time in Plaintiff's tenure with the NYT where he did not receive an annual review indicating he had exceeded expectations.

29. Despite the baseless PIP, Plaintiff successfully completed the PIP on May 19, 2023, and continued to perform admirably for Defendant.

30. Following the birth of his child in late June 2023, Plaintiff informed Mr. Williams of his child's birth and that he would be taking leave.

31. Mr. Williams acknowledge receipt of this information and did not express any disapproval of Plaintiff taking leave.

32. At that time, Mr. Williams once again did not provide any information to Plaintiff concerning his rights pursuant to the FMLA, nor did Mr. Williams refer Plaintiff to any

person or department within NYT who would have information concerning Plaintiff's rights pursuant to the FMLA.

33. Plaintiff took paternity leave through August 13, 2023, utilizing six out of his 20 weeks of paternity leave, as allowed by the NYT policy.

34. While Plaintiff was on paternity leave he was not contacted by anyone from NYT concerning his rights pursuant to the FMLA.

35. While Plaintiff was on leave, Mr. Williams assumed Plaintiff's job duties.

36. Plaintiff returned to work on August 14, 2023.

37. On August 23, 2023, just nine (9) days after Plaintiff returned to work from his leave, NYT launched a process on its website known as SLAYER.

38. NYT believed or stated that it believed that the SLAYER launch did not go well.

39. However, when the issue with SLAYER was first identified, two colleagues of Plaintiff with the job titles were (1) Vice President of Data and Insights, Growth Analytics, and (2) Executive Director of Growth Analytics, stated that the issue with SLAYER was nothing to worry about and there was no need to look into it further until more data was obtained.

40. Nonetheless, Plaintiff insisted that the problems SLAYER was experiencing were double-checked, and he immediately identified the issue and quickly fixed any problems with the SLAYER launch.

41. Plaintiff was commended by his colleagues for his work related to resolving the issues with the SLAYER launch.

42. On or about October 5, 2023, during a scheduled meeting with Mr. Williams, Plaintiff reiterated his intention to take the remaining 14 weeks of paternity leave in January 2024 and requested information regarding his performance since his return in August.

43. At that time, Mr. Williams, once again, did not provide any information to Plaintiff concerning his rights pursuant to the FMLA, nor did Mr. Williams refer Plaintiff to any person or department within NYT who would have information concerning Plaintiff's rights pursuant to the FMLA.

44. Defendant did not provide the information requested by Plaintiff concerning his performance since his return from paternity leave.

45. After Plaintiff's return from paternity leave, neither NYT nor Mr. Williams gave Plaintiff any negative feedback or warning that Plaintiff was in danger of being terminated or further disciplined.

46. On October 10, 2023, Plaintiff had a meeting with Mr. Williams and Ben Cotton, Head of Subscription Growth at NYT.

47. During the meeting on October 10, 2023, Plaintiff's employment was terminated.

48. During the meeting on October 10, 2023, Plaintiff was told by Mr. Williams that "due to the recent botched SLAYER launch, it is best that we part ways."

49. Mr. Williams was referencing the alleged "botched SLAYER launch" on August 23, 2023, which occurred just nine (9) days after Plaintiff's return from paternity leave.

50. Mr. Williams, who assumed Plaintiff's job duties while he was on paternity leave, including duties related to the SLAYER launch, was not terminated or otherwise disciplined for the alleged "botched SLAYER launch."

51. Upon information and belief, only Plaintiff was terminated or otherwise disciplined for the alleged "botched SLAYER launch."

52. As a result of Defendant's unlawful termination and other reprisals taken against Plaintiff, Plaintiff has suffered and continues to suffer past and future economic losses of income and benefits of employment, and has suffered and continues to suffer severe emotional distress and mental anguish.

### FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### (Interference in Violation of the FMLA)

53. Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered 1 through 52, as if fully set forth herein.

54. Plaintiff was an eligible employee as defined by the FMLA and its regulations.

55. Defendant was a covered employer as defined by the FMLA and its regulations.

56. Plaintiff was entitled to leave and other benefits of the FMLA at all times relevant to this action.

57. Pursuant to the acts alleged herein, Plaintiff gave notice to Defendants of his intention or desire to take leave.

58. Pursuant to the acts and practices alleged herein, Defendant interfered with or denied Plaintiff benefits to which he was entitled by the FMLA, including intermittent leave and other benefits provided by the FMLA.

59. As a result of Defendant's intentional interference with Plaintiff's FMLA rights, Plaintiff has sustained substantial financial losses in the past and will continue to suffer substantial financial losses in the future.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (Retaliation in Violation of FLSA)

60. Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered 1 through 59, as if fully set forth herein.

61. As alleged herein, Plaintiff engaged in protected activities.

62. Defendant was aware of Plaintiff's engagement in the protected activities alleged herein.

63. As a direct and proximate result of Plaintiff's engagement in protected activities, Plaintiff has been subjected to adverse employment actions as alleged herein.

64. As a result of Defendant's intentional retaliation against Plaintiff, Plaintiff has sustained substantial financial losses in the past and will continue to suffer substantial financial losses in the future.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS
### (Discrimination Based Upon Caregiver Status in Violation of NYCHRL)

65. Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered 1 through 64, as if fully set forth herein.

66. Plaintiff is a member of the protected class.

67. At all times relevant to this action, Plaintiff was qualified to hold his position of employment with Defendant.

68. As alleged herein, Plaintiff was subjected to adverse employment actions and disparate treatment because of his caregiver status.

69. As alleged herein, Plaintiff's co-workers who do not belong to the protected class were not subjected to the same adverse employment actions and were provided with preferential conditions of employment.

8

70. As a result of Defendant's discriminatory practices, Plaintiff has sustained substantial past and future financial losses and suffered and continues to suffer from severe emotional distress and mental anguish.

71. Defendant intentionally discriminated against Plaintiff with malice or with reckless indifference to the statutorily protected rights of Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant containing the following relief:

a)   An order declaring Defendant has violated the FMLA and the NYCHRL;

b)   An order enjoining Defendant from engaging in the unlawful activities alleged above;

c)   An order awarding monetary damages to Plaintiff resulting from the economic losses past and future lost income and benefits of employment sustained due to violations of the FMLA and the NYCHRL;

d)   An order awarding compensatory damages to Plaintiff arising from the emotional distress and mental anguished caused by Defendant's unlawful conduct pursuant to the NYCHRL;

e)   An order awarding liquidated damages to Plaintiff pursuant to the FMLA;

f)   An order awarding punitive damages to Plaintiff pursuant to the NYCHRL;

g)   An order awarding prejudgment interest to Plaintiff;

h)   An award of Plaintiff's reasonable attorney's fees;

i)   An award of the Plaintiff's costs of this action; and

j)   Any such other and further relief this court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in this action.

Dated: January 22, 2024
      Rye Brook, NY

Justin S. Clark
LEVINE & BLIT, PLLC
800 Westchester Ave., S-322
Rye Brook, NY 10573
Tel. (212) 967-3000
jclark@levineblit.com
*Attorneys for Plaintiff*

10